LAW OFFICES

# COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.

1125 ATLANTIC AVENUE – 3rd FLOOR
ATLANTIC CITY, NEW JERSEY 08401
(609) 344-3161
Facsimile (609) 344-0939
www.cooperlevenson.com

## FACSIMILE

### PLEASE DELIVER AS SOON AS POSSIBLE TO:

| RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|
| Patricia S. Robinson, Esquire | | (732) 560-0788 | (732) 560-0788 |

Total number of pages including this page: 16

**FROM:** Stephanie E. Farrell, Esquire   **FILE NO.:** 51067.1
**PHONE:** (609) 572-7408

**DATED:** May 18, 2004

---

**MESSAGE:** RE: SANTOSUOSSO V. NOVACARE

---

☐ Original will not follow         ☐ Overnight Delivery
☒ Original/Copy will follow        ☐ Hand Delivery
☒ Regular Mail                     ☐ Other

**IF YOU EXPERIENCE ANY PROBLEMS RECEIVING THIS FAX,
PLEASE CALL (609) 572-7378.**

***NOTICE OF CONFIDENTIALITY***

THE DOCUMENTS ATTACHED TO THIS COVER LETTER CONTAIN INFORMATION WHICH IS BOTH CONFIDENTIAL AND LEGALLY PRIVILEGED.

This information is intended solely for the use of the individual named as the recipient above. All others are notified that any unauthorized copying, distribution, or disclosure of these materials, or the taking of any action in reliance thereon is prohibited. If you have received this telecopy in error, please notify the sender immediately and follow the directions given to you for the safeguarding or destruction of the documents in question.



# COOPER LEVENSON
### ATTORNEYS AT LAW

1125 Atlantic Avenue
Atlantic City, NJ 08401
Phone 609-344-3161
Toll Free 800-529-3161
Fax 609-344-0939
www.cooperlevenson.com

STEPHANIE E. FARRELL
EMAIL: sfarrell@cooperlevenson.com

Direct Dial:   (609) 572-7408
Direct Fax:    (609) 572-7409

FILE NO.: 51067.1

May 18, 2004

**VIA FACSIMILE & REGULAR MAIL**

Patricia S. Robinson, Esquire
Collier Jacob & Mills, PC
580 Howard Avenue
Somerset, NJ 08873

    Re:    Karen Santosuosso v. NovaCare, Select Medical Corp. and Joseph Derella
            Docket No. ATL-L-1470-04

Dear Ms. Robinson:

    Per our discussion on this date, I am enclosing a copy of the complaint I have filed on behalf of Karen Santosuosso. Kindly advise whether you will accept service of same, and if so, please advise for whom you will agree to accept service.

    Thank you.

Very truly yours,

Stephanie E. Farrell

SEF:bhs
Enclosure

CPAC:461235.1

ATLANTIC CITY
CHERRY HILL
CAPE MAY COURT HOUSE
PRINCETON
NORTHFIELD

COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.

Russell L. Lichtenstein, Esquire
Stephanie E. Farrell, Esquire
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, PA
1125 Atlantic Avenue - 3rd Floor
Atlantic City, NJ 08401
(609) 344-3161
File No.: 51067.1
Attorneys for Plaintiff, Karen Santosuosso

| | |
|---|---|
| KAREN SANTOSUOSSO<br><br>                                Plaintiff, <br><br>v.<br><br>NOVACARE REHABILITATION, SELECT MEDICAL CORPORATION, JOSEPH DERELLA, individually, and JOHN DOES 1-10 (FICTITIOUS NAMES, WHETHER THEY BE INDIVIDUALS, PARTNERSHIPS, CORPORATIONS OR OTHERWISE; PRESENT IDENTITIES UNKNOWN),<br><br>                                Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>ATLANTIC COUNTY<br><br>DOCKET NO.: ATL-L-<br><br>Civil Action<br><br>**COMPLAINT** |

Plaintiff, Karen Santosuosso, by way of complaint against the above-named defendants hereby states:

## PARTIES

1. Plaintiff, Karen Santosuosso, is an adult individual who resides at 6163 Falcon Run Road, Mays Landing, Atlantic County, New Jersey 08330.

2. Defendant, NovaCare Rehabilitation, is a division of Select Medical Corporation that operates clinics throughout the State of New Jersey, including Atlantic County. NovaCare Rehabilitation employs more than 50 employees.

3. Defendant, Select Medical Corporation, is a Delaware corporation with offices in Pennsylvania. It is subject to the jurisdiction of the State of New Jersey as a result of operating NovaCare facilities therein.

4. Defendant, Joseph Derella, is an adult individual who resides at 865 Carmel Road, Millville, Cumberland County, NJ 08332.

## FACTUAL BACKGROUND

5. Plaintiff is a licensed Physical Therapist in the State of New Jersey.

6. In or about March of 1996, plaintiff was employed by Physical Therapy and Sports Services (hereinafter "PTSS") as a Center Manager for the Ventnor clinic when NovaCare purchased PTSS.

7. Plaintiff continued in her position as the Center Manager of the Ventnor clinic until in or about September of 2000, when Paul Martin, a licensed Physical Therapist who was the Clinical Operations Director (COD) at the time, promoted her to Center Manger/ Manager of Clinical Operations (MCO) overseeing clinics in Atlantic and Cape May Counties.

8. In or about the Spring of 2001, Paul Martin left his employ with NovaCare. He was replaced as COD by defendant Joseph Derella, who is a Certified Athletic Trainer.

9. In or about the Fall of 2001, defendant Joseph Derella decreased plaintiff's MCO area of responsibility by removing the Marmora clinic from her supervision. Without advertising for an MCO position, defendant Derella transferred Frank McBride, a licensed physical therapist into an MCO position and assigned him the Marmora clinic. Although Mr. McBride was less experienced than plaintiff, defendant Derella compensated Mr. McBride at a higher rate than plaintiff was compensated.

10. On or about October 14, 2002, plaintiff went out on maternity leave for the birth of her first child. She returned to work on March 3, 2003.

11. During her maternity leave, in or about February of 2003, plaintiff asked defendant Derella if it would be permissible upon her return for her to work in the office 32 to 35 hours per week and then do some work at home for up to 8 hours per week, doing such things as reports, reviews and catching up on paperwork.

12. On or about March 3, 2003, plaintiff's first day back to work, she was removed from her MCO position and replaced by Frank McBride. While her salary was not reduced when she was demoted from MCO to Center Manager of the Ventnor clinic, she was docked pay for hours that she worked at home instead of in the office even though she was an exempt employee who was not paid overtime when she was in the office for more than 40 hours per week. Further, although plaintiff's salary was not reduced when she was removed from the MCO position, Frank McBride was paid more for holding that position than plaintiff ever was.

13. On or about March 4, 2003, plaintiff attended a meeting with Frank McBride, her new MCO and defendant Derella to discuss the Ventnor clinic's decrease in volume and profits during plaintiff's maternity leave. Mr. McBride and defendant Derella asked plaintiff to "work her magic" to get the numbers back up. A number of factors contributed to the reduced volume and profits, including bad winter weather when many of the patients at the Ventnor clinic are elderly, the opening of competitor Shore Ortho Clinic and the loss of the contract between NovaCare and the Trump properties.

14. Despite these obstacles, plaintiff reorganized and marketed area doctors resulting in increased volume that almost doubled by July of 2003. Defendant Derella e-mailed plaintiff to thank her and comment on how good the numbers were.

15. In or about July of 2003, plaintiff learned that she was pregnant with her second child.

16. On or about September 2, 2003, because there was a meeting of all area employees scheduled for September 4, 2003 and her pregnancy was beginning to show, plaintiff e-mailed Mr. McBride and defendant Derella to advise them of her pregnancy. Mr. McBride responded with "congratulations," but defendant Derella did not respond.

17. On or about September 3, 2003, plaintiff received a phone call from defendant Derella wherein he congratulated her on her pregnancy and then inquired as to whether it was planned and advised plaintiff he wanted to meet with her after the area employees meeting on September 4, 2003.

18. Plaintiff met with defendant Derella as scheduled. At their meeting, two days after plaintiff had announced her pregnancy, defendant Derella advised plaintiff that she was being demoted to a staff physical therapist and being transferred to the Marmora Clinic effective September 8, 2003, or in the alternative, she could be terminated with 8 weeks severance pay. Plaintiff was advised that the reason for this was because of "grey areas" on her time sheet (though plaintiff was an exempt employee who was not even supposed to have to keep a time sheet), because of poor performance of the clinic (despite the fact that numbers were up) and because staff morale was down and three employees allegedly wanted to transfer out of the clinic. Defendant Derella indicated to plaintiff that he would advise her staff that it was plaintiff's decision to transfer because of her pregnancy and family obligations so she

could "save face". Plaintiff declined and told her staff the truth about the reasons she was given for being transferred.

19. Plaintiff was temporarily replaced as the Center Manager of the Ventnor clinic by Frank McBride, and ultimately the position was filled by another male who was apparently promised a Center Manager position a year earlier.

20. On or about September 8, 2003, plaintiff reported to work at the Marmora clinic where she was monitored closely without reason.

21. On or about September 12, 2003, plaintiff was terminated from her position after being accused of forgery.

22. Although all of the other staff members were presented with a paper to sign indicating that they did not commit the forgery, plaintiff was never presented with the document that was allegedly forged, and she was never presented with or given the opportunity to sign the paper indicating that she did not engage in forgery.

23. On or about September 13, 2003, plaintiff learned from a former fellow co-worker that defendants were alleging that plaintiff falsified a patient chart.

## COUNT ONE

24. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 as if set forth in full herein.

25. At the time of plaintiff's termination, defendant NovaCare employed more than 50 employees. Consequently, defendant NovaCare is subject to the provisions of the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.*, hereinafter "FMLA" and the New Jersey Family Leave Act, N.J.S.A. §34:11B-1, *et seq.*, hereinafter "FLA".

26. Plaintiff qualified for her prior leave from October 14, 2002 through March 3, 2003 under the FMLA and the FLA.

27. Defendants failed to place plaintiff in the same or an equivalent position upon her return to NovaCare.

28. Said failure is a direct violation of the FMLA and the FLA.

WHEREFORE, plaintiff, Karen Santosuosso, demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, attorneys fees and costs, interest and such other relief as the Court deems appropriate.

## COUNT TWO

29. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Count One as if set forth in full herein.

30. Plaintiff's demotion upon her return from leave was in retaliation for exercising her rights under the FMLA and FLA.

31. Said retaliation constitutes a violation of the provisions of the FMLA and the FLA.

WHEREFORE, plaintiff, Karen Santosuosso, demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, attorneys fees and costs, interest and such other relief as the Court deems appropriate.

## COUNT THREE

32. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Counts One and Two as if set forth in full herein.

33. Had plaintiff not been terminated, she would have qualified for FMLA and FLA leave for the birth of her second child.

34. In violation of the provisions of the FMLA and the FLA, defendants terminated plaintiff, knowing that she would again be exercising her rights thereunder.

WHEREFORE, plaintiff, Karen Santosuosso, demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, attorneys fees and costs, interest and such other relief as the Court deems appropriate.

## COUNT FOUR

35. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Counts One through Three as if set forth in full herein.

36. Plaintiff was a member of a protected class at the time of her first demotion from MCO to Center Manager, because she is female.

37. Plaintiff was qualified for the position of MCO.

38. Defendants demoted plaintiff and replaced her with a person outside of the protected class.

39. Defendants' stated reason for demoting plaintiff was nothing more than a pretext for discrimination.

40. Defendants' conduct constitutes discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, *et seq.*, hereinafter "NJLAD".

41. Defendants' actions deprived plaintiff of the ability to enjoy the benefits and privileges of her employment.

42. Defendants' conduct was further designed to and did cause plaintiff to suffer extreme emotional and physical distress, humiliation, embarrassment, damage to her self-confidence and financial damages.

Wherefore, plaintiff demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, equitable relief and damages, back pay, interest, costs of suit and such other relief as the Court deems appropriate.

## COUNT FIVE

43. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Counts One through Four as if set forth in full herein.

44. Plaintiff was a member of a protected class at the time of her second demotion from Center Manager to Staff Physical Therapist, because she is female and because she was pregnant at the time of her demotion.

45. Plaintiff was qualified for the position of Center Manager.

46. Plaintiff was temporarily replaced as the Center Manager of the Ventnor clinic by Frank McBride, and ultimately the position was filled by another male who was apparently promised a Center Manager position a year earlier.

47. Defendants' stated reason for demoting plaintiff was nothing more than a pretext for discrimination.

48. Defendants' conduct constitutes discrimination in violation of the NJLAD.

49. Defendants' actions deprived plaintiff of the ability to enjoy the benefits and privileges of her employment.

50. Defendants' conduct was further designed to and did cause plaintiff to suffer extreme emotional and physical distress, humiliation, embarrassment, damage to her self-confidence and financial damages.

Wherefore, plaintiff demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, equitable relief and damages, back pay, interest, costs of suit and such other relief as the Court deems appropriate.

## COUNT SIX

51. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Counts One through Five as if set forth in full herein.

52. Plaintiff was a member of a protected class at the time of her termination from employment with defendant NovaCare Rehabilitation, because she is female and because she was pregnant at the time of her termination.

53. Defendants' stated reason for terminating plaintiff was nothing more than a pretext for discrimination.

54. Defendants' conduct constitutes discrimination in violation of the NJLAD.

55. Defendants' actions deprived plaintiff of the ability to enjoy the benefits and privileges of her employment.

56. Defendants' conduct was further designed to and did cause plaintiff to suffer extreme emotional and physical distress, humiliation, embarrassment, damage to her self-confidence and financial damages.

Wherefore, plaintiff demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, equitable relief and damages, back pay, interest, costs of suit and such other relief as the Court deems appropriate.

## COUNT SEVEN

57. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Counts through Six as if set forth in full herein.

58. Although plaintiff was more experienced than Frank McBride, when Mr. McBride replaced her as the MCO, he was compensated at a higher rate than plaintiff.

59. Plaintiff did not receive the same rate of pay as Frank McBride because she is female.

60. This differential in rate of pay constitutes disparate treatment under the NJLAD.

Wherefore, plaintiff demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, equitable relief and damages, back pay, interest, costs of suit and such other relief as the Court deems appropriate.

## COUNT EIGHT

61. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Counts One through Seven as if set forth in full herein.

62. Defendant Joseph Derella was plaintiff's supervisor when plaintiff was demoted and ultimately terminated.

63. Defendant Joseph Derella made the decisions to demote and ultimately to terminate plaintiff.

64. Defendant Joseph Derella also made the decision to compensate Mr. McBride at a higher rate of pay than plaintiff for filling the MCO position.

65. Said conduct on behalf of defendant Derella subjects him to individual liability under the NJLAD.

Wherefore, plaintiff demands the following relief, jointly, severally and/or in the alternative, against defendant Derella; compensatory damages, punitive damages, equitable relief and damages, back pay, interest, costs of suit and such other relief as the Court deems appropriate.

## COUNT NINE

66. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Counts One through Eight as if set forth in full herein.

67. Defendants Novacare Rehabilitation and Select Medical Corporation are strictly liable for the discriminatory actions of their supervisors.

Wherefore, plaintiff demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, equitable relief and damages, back pay, interest, costs of suit and such other relief as the Court deems appropriate.

## COUNT TEN

68. Plaintiff, Karen Santosuosso, repeats and incorporates the allegations contained in Paragraphs 1-21 and Counts One through Nine as if set forth in full herein.

69. The statement that plaintiff falsified a patient chart is a false statement of fact about the plaintiff, which was published by defendants to at least one former co-worker of the plaintiff.

70. Said publication of this false statement constitutes defamation.

71. As a result of said defamation, plaintiff has suffered injury to her reputation and has been caused to suffer extreme emotional and physical distress, humiliation, embarrassment, damage to her self-confidence and financial damages.

Wherefore, plaintiff demands the following relief, jointly, severally and/or in the alternative, against all defendants; compensatory damages, punitive damages, equitable relief and damages, back pay, interest, costs of suit and such other relief as the Court deems appropriate.

## JURY DEMAND

Trial by jury is hereby demanded as to all issues set forth herein.

## NOTICE OF TRIAL COUNSEL

PLEASE BE NOTIFIED that pursuant to Rule 4:25-4, Russell L. Lichtenstein, Esquire, is hereby designated as trial counsel in the above-captioned litigation on behalf of the firm of Cooper Levenson April Niedelman & Wagenheim, P.A.

## CERTIFICATION PURSUANT TO RULE 4:5-1

The undersigned, Stephanie E. Farrell, certifies on behalf of the above named plaintiff as follows:

1. I am an attorney admitted to practice law in the State of New Jersey, with the firm of Cooper Levenson April Niedelman & Wagenheim, P.A., counsel for the above named plaintiff.

2. The matter in controversy in this matter is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

3. At this time, there are no other parties who should be joined in this action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM, P.A.

By: _____
STEPHANIE E. FARRELL, ESQUIRE
Attorneys for Plaintiff Karen Santosuosso

DATED: 5/13/04

CPAC:416206.1



# CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division-Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.

**FOR USE BY CLERK'S OFFICE ONLY**
PAYMENT TYPE: CK  CG  CA
CHG/CK NO.:
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

**ATTORNEY/PRO SE NAME:** Russell L. Lichtenstein, Esquire
**TELEPHONE NUMBER:** (609) 344-3161
**COUNTY OF VENUE:** Atlantic

**FIRM NAME (If Applicable):** Cooper Levenson April Niedelman & Wagenheim
**DOCKET NUMBER (When Available):**

**OFFICE ADDRESS:** 1125 Atlantic Avenue, Third Floor, Atlantic City, N.J. 08401
**DOCUMENT TYPE:** Complaint
**JURY DEMAND:** ☒ YES ☐ NO

**NAME OF PARTY:** Karen Santosuosso
**CAPTION:** Karen Santosuosso v. Novacare Rehabilitation, Select Medical Corporation, Joseph Derella, individually and John Does 1-10 (fictitious names whether they be individuals, partnerships, corporations or otherwise, present identities unknown)

**CASE TYPE NUMBER** (See reverse side for listing): 618
**IS THIS A PROFESSIONAL MALPRACTICE CASE?** ☐ YES ☒ NO
IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?** ☐ Yes ☒ No
**IF YES, LIST DOCKET NUMBERS:**

**DO YOU ANTICIPATE ADDING ANY PARTIES** (arising out of same transaction or occurrence)? ☐ Yes ☒ No
**NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN:** ☐ NONE ☒ UNKNOWN

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☒ Yes ☐ No
IF YES, IS THAT RELATIONSHIP: ☒ EMPLOYER-EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) _____ ☐ FAMILIAL ☐ BUSINESS

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☒ YES ☐ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ Yes ☒ No
IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____

WILL AN INTERPRETER BE NEEDED? ☐ Yes ☒ No
IF YES, FOR WHAT LANGUAGE? _____

**ATTORNEY SIGNATURE:** /s/ Russell L. Lichtenstein

Revised 10/1/02

**SIDE 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial pleadings (not motions) under Rule 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I – 150 days' discovery
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY
- 502  BOOK ACCOUNT
- 503  COMMERCIAL TRANSACTION
- 505  OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
- 506  PIP COVERAGE
- 510  UM OR UIM CLAIM
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 599  CONTRACT
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)

### Track II – 300 days' discovery
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 602  ASSAULT AND BATTERY
- 603  AUTO NEGLIGENCE – PERSONAL INJURY
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 699  TORT – OTHER

### Track III – 450 days' discovery
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV – Active Case Management by Individual Judge/450 days' discovery.
- 156  ENVIRONMENTAL COVERAGE LITIGATION
- 234  FRT PLYWOOD LITIGATION
- 245  ACTIONS UNDER FEDERAL Y2K ACT
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 613  REPETITIVE STRESS SYNDROME
- 701  ACTIONS IN LIEU OF PREROGATIVE WRIT

### Mass Tort (Track IV)

| | | | | |
|---|---|---|---|---|
| 240 | DIET DRUG | | 601 | ASBESTOS |
| 241 | TOBACCO | | 612 | BLOOD-CLOTTING SERUM |
| 243 | LATEX | | 702 | LEAD PAINT |
| 246 | REZULIN | | | |
| 247 | PROPULSID | | | |
| 248 | CIBA GEIGY | | | |
| 264 | PPA | | | |

- 999  OTHER (Briefly describe nature of action)

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

CPAC:354263.1

Revised 10/1/02